**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW T. DEIVERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PITTSBURGH CHAUFFEUR, LLC. | : | |
| | : | |
| Appellant | : | No. 1314 WDA 2017 |

Appeal from the Judgment Entered September 1, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD No 15-019904

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

DISSENTING MEMORANDUM BY SHOGAN, J.:   FILED: April 2, 2018

The learned Majority found no abuse of discretion in the trial court's admission of testimony by the plaintiff's expert, Dr. Gregory Habib.  I, however, question how Dr. Habib's opinion translated to legal causation based on accepted scientific methodology.  Finding inadequate support in the law and the record at hand for the admission of Dr. Habib's testimony, I respectfully dissent.

Pa.R.E. 702 governs the admissibility of expert testimony on scientific knowledge, which includes medical knowledge, and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

_____
* Retired Senior Judge assigned to the Superior Court.

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Rule 702 embodies the *Frye* test, derived from *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and adopted in Pennsylvania in *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977). "*Frye* only applies to determine if the relevant scientific community has generally accepted the principles and methodology the scientist employs. . . ." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043–1044 (Pa. 2003). The *Frye* test does not require proof "that the scientific community has also generally accepted the expert's conclusion." *Id.* at 1045. In light of *Frye*, "expert testimony must be based on more than mere personal belief and must be supported by reference to facts, testimony or empirical data." *Snizavich v. Rohm & Haas Co.*, 83 A.3d 191, 195 (Pa. Super. 2013) (internal quotation marks and citations omitted).

I take issue in this case with the methodology Dr. Habib employed to reach his causation conclusion. This Court has addressed the meaning of "methodology" as follows:

As The Supreme Court observed in [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], "'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.'" *Daubert*, 509 U.S. at 593, . . . quoting Green, *Expert Witnesses and Sufficiency of Evidence in Toxic Substances Litigation: The Legacy of Agent Orange and Bendectin Litigation*, 86 Nw. U.L.Rev. 643, 645 (1992). Stated differently, the scientific method is "a

method of research in which a problem is identified, relevant data are gathered, a hypothesis is formulated from these data, and the hypothesis is empirically tested." Webster's Encyclopedic Unabridged Dictionary of the English Language ("Webster's") 1279 (1989). Within the meaning of the definition of the scientific method, "empirical" means "provable or verifiable by experience or experiment." **Id.** [at] 468. Key aspects of the scientific method include the ability to test or verify a scientific experiment by a parallel experiment or other standard of comparison (control) and to replicate the experiment to expose or reduce error. **Id.** [at] 318–319, 1217.

**Trach v. Fellin**, 817 A.2d 1102, 1113 (Pa. Super. 2003) (*en banc*).

Dr. Habib used the methodology of extrapolation. "Extrapolation is not science: in fact, it is a logical method used to estimate the value of a variable outside its tabulated or observed range" or "to infer (that which is not known) from that which is known." **Trach**, 817 A.2d at 1114 (citation omitted). Extrapolation has gained general acceptance in the scientific community under certain limited circumstances: "[W]hen the medical inquiry is new or the opportunities to examine a specific cause and effect relationship are limited; when the number of cases limits study of the disease; or . . . when ethical considerations prevent exposing individuals to a toxic substance for research purposes." **Id.** at 1116 (citation omitted).

Dr. Habib, an orthopedic surgeon, did not treat the plaintiff and did not reference any literature or cases of burns arising from this specific type of situation. In fact, he repeatedly characterized the plaintiff's burn as a "unique situation." Dr. Habib's Deposition, 5/3/17, at 19, 27, 32, 44, 47, 48, 50, 60. In extrapolating that the plaintiff's injuries resulted from the same

biomechanics as a bed sore or a friction burn, Dr. Habib failed, however, to divulge the underlying scientific foundation for his opinion. Contrary to established scientific methodology, Dr. Habib did not "assemble all of the information," "perform a weight of the evidence evaluation," and decide, "based on the most credible work, what story is being told" as to the creation of a full-thickness friction burn from a twenty-minute ride in a cramped limousine. *See Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 38 (Pa. 2012) (illustrating how medical expert's extrapolated conclusion that any inhalation of asbestos fiber was substantial factor in causing mesothelioma was not based on accepted scientific method). *See also Checchio v. Frankford Hospital–Torresdale Division*, 717 A.2d 1058 (Pa. Super. 1998) (affirming inadmissibility of experts' testimony that was based "entirely on [their] own observations and experience in the field without any reference to outside sources on which [they] might predicate [their] findings"); *Snizavich*, 83 A.3d 191 (rejecting expert's testimony because it failed to demonstrate "any scientific basis, other than his own subjective beliefs"). *Cf. Harris v. NGK North American, Inc.*, 19 A.3d 1053 (Pa. Super. 2011) (reversing exclusion of expert's testimony that referenced outside data that supported the causal relationship he asserted).

Indeed, I see no indication in Dr. Habib's report of the scientific method: Dr. Habib did not provide any description of a complete review of the wound care, friction burn, or dermatology literature that exists. He did not discuss

whether the literature was adequate or not. He did not summarize that literature. In fact, Dr. Habib made no mention, let alone synthesis, of the literature. Additionally, Dr. Habib did not discuss the strengths and weaknesses of various studies or case reports related to wound care, friction burns, or dermatologic reactions that he relied upon. In fact, Dr. Habib did not rely on any studies or case reports.[1] Dr. Habib provided no specific information regarding how much pressure, heat, and time are required to cause a full-thickness wound; how the patient's age and health affect the formation of a full-thickness wound; how environmental, genetic, and/or pre-existing conditions affect the formation of a full-thickness wound. In short, Dr. Habib offered no science in support of his conclusion that a twenty-minute ride in a cramped limousine caused a full-thickness wound.

What I do see is an opinion based "on subjective assessments of both cause and effect." *Checchio*, 717 A.2d at 1062. Dr. Habib jumped from a general hypothesis, *i.e.*, pressure and heat can cause sores, to a specific conclusion, *i.e.*, the plaintiff's twenty-minute ride in a cramped limousine caused a full-thickness wound. This approach disregards the generally accepted methodology for looking at causation in that Dr. Habib's opinion was

_____

[1] *Cf. Trach*, 817 A.2d at 1119 (affirming admission of medical testimony as to causation where expert reviewed patient's medical records and medical literature and extrapolated from the documented adverse effects of Doxepin in recommended doses, which effects were derived from clinical trials and clinical experience with Doxepin at therapeutic levels, to conclude that patient's injuries resulted from a massive overdose of Doxepin).

not based upon extrapolating from a sound scientific principle logically applied in a manner that can be affirmatively articulated, referenced, reviewed, tested, and empirically verified. ***Betz***, 44 A.3d at 39 (citing trial court opinion). Rather, his testimony strikes me as the "best estimate," the "gut instinct," or the "educated guess" of an orthopedic surgeon in the context of a unique fact pattern. ***Id.***

This Court has opined, "[T]he breadth and character of an expert's extrapolations are relevant to the scientific acceptance of his methodology. The alternative is to permit experts to evade a reasoned ***Frye*** inquiry merely by making references to accepted methods in the abstract." ***Betz***, 44 A.3d at 58. Dr. Habib's methodology is based on the use of abstract assertions about the formation of bedsores or friction burns to reach a specific conclusion about the plaintiff's injury. At a minimum, the trial court should have conducted a ***Frye*** hearing. Therefore, I respectfully dissent.